UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| H N HINCKLEY & SONS, INC., | ) | Case No. 18-10398-JNF |
| | ) | |
| Debtor. | ) | |

**PLAN OF REORGANIZATION OF H N HINCKLEY & SONS, INC.**

H N Hinckley & Sons, Inc., the debtor and debtor-in-possession in the above captioned bankruptcy proceeding, hereby proposes the following plan of reorganization under Section 1121 of the Bankruptcy Code.  Pursuant to this Plan, the Debtor will pay 8% of allowed priority and secured tax claims and 3% of allowed general unsecured claims.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I. A capitalized term used but not defined in this Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "in this Plan," "this Plan," "hereto," "herein," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of this Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions this Plan.

**1.1** "Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including Professional Fee Claims.

**1.2** "Allowed" shall mean, with reference to any Claim:

(a) Any Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim or interest has been filed;

(b) Any Claim as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Non-Appealable Order;

(c) Any Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d) Any Claim expressly allowed under this Plan or pursuant to the Confirmation Order.

**1.3** "Bankruptcy Case" shall mean the Debtor's bankruptcy case pending in the

2

Bankruptcy Court for the District of Massachusetts, identified as Chapter 11 case number 18-10398-JNF.

**1.4**    "<u>Bankruptcy Code</u>" shall mean Title 11 of the United States Code, as amended from time to time.

**1.5**    "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the District of Massachusetts in which the bankruptcy case is pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.6**    "<u>Bankruptcy Rules</u>" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.7**    "<u>Bar Date</u>" shall mean the date fixed by an Order of the Bankruptcy Court that fixes the last date by which Persons asserting certain Claims against the Debtor must file a proof of claim or interest or be forever barred from asserting a Claim against the Debtor or its Property, from voting on the Plan and/or sharing in distributions under the Plan. The Bar Date in this case is September 17, 2018 as more fully explained in the Bankruptcy Court's order dated August 1, 2018 and denominated as docket number 125 in the Bankruptcy Case.

**1.8**    "<u>Business Day</u>" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

**1.9**    "<u>Cash</u>" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.10**    "<u>Causes of Action</u>" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise.

**1.11**    "<u>Claim</u>" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.12**    "<u>Class</u>" shall mean those classes designated in Article III of this Plan.

**1.13**    "<u>Collateral</u>" shall mean any Property or interest in Property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to

3

avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.14** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this bankruptcy case.

**1.15** "Confirmation Hearing" shall mean the hearing before the Bankruptcy Court on confirmation of this Plan.

**1.16** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.17** "Debtor" shall mean H N Hinckley & Sons, Inc.

**1.18** "Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.19** "Disputed Claim" shall mean:

(a)     if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)     if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Non-Appealable Order; or

(c)     a Claim that is a contingent or unliquidated Claim.

**1.20** "Effective Date" shall mean the first Business Day after the Confirmation Date when all conditions precedent to the occurrence of the Effective Date set forth in Section 10.1 of this Plan have been satisfied or waived pursuant to Section 10.2 of this Plan.

**1.21** "Equity Holder" shall mean shareholders, holders, or owners of Equity Interests in the Debtor as of the Petition Date.

**1.22** "Equity Interest" shall mean the common stock of the Debtor.

**1.23** "Estate" shall mean the estate created in the Debtor's bankruptcy case pursuant to Section 541 of the Bankruptcy Code.

**1.24** "General Unsecured Claim" shall mean a Claim that is: (a) not a Secured Claim, and (b) not entitled to priority of payment under Section 507 of the Bankruptcy Code.

**1.25** "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a Non-Appealable order of the Bankruptcy Court or by agreement of the Debtor.

**1.26** "Non-Appealable Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (b) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Non-Appealable Order.

**1.27** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision under this Plan.

**1.28** "Petition Date" shall mean February 6, 2018, the date upon which the Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court.

**1.29** "Plan" shall mean this ***Plan of Reorganization***, including, without limitation, the plan documents, all exhibits, supplements, appendices and schedules to this Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.30** "Plan Period" shall mean the period commencing on the Effective Date and terminating on the date the last payment is made pursuant to this Plan on any Allowed Class Two Claim or Allowed Class Three Claim.

**1.31** "Priority Claims" shall mean any and all Claims (or portions this Plan), if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**1.32** "Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.33** "Professionals" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code.

**1.34** "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code as approved by an Order of the Bankruptcy Court, as well as such fees and expenses arising at any time subsequent to the Confirmation Date.

**1.35** "Property" shall mean property, whether tangible or intangible, in which the Debtor holds a legal or equitable interest as of the Effective Date.

**1.36** "Reorganized Debtor" shall mean H N Hinckley & Sons, Inc., from and after the Effective Date, as reorganized pursuant to this Plan and any associated documents.

**1.37** "Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.38** "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**ARTICLE II**

**TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSES**

**2.1**    **Administrative Expense Claims.** Except for Professional Fee Claims and except as otherwise agreed to by the Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of: (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms; and (ii) the Effective Date. If the Debtor disputes any portion of an Administrative Expense Claim, the Debtor shall pay the Allowed amount of such Administrative Expense Claim within thirty (30) days after the entry of a Non-Appealable Order with respect to the allowance of such disputed Administrative Expense Claim.

**2.2**    **Professional Compensation and Expense Reimbursement Claims.**

(i)    Within thirty (30) days after the Effective Date, each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date. Any such application granted by the Bankruptcy Court shall be paid: (1) within thirty days of the entry of the order of the Bankruptcy Court approving such application, unless a stay of the order approving the application is obtained; or (2) upon such other terms as may be mutually agreed upon between the Professional and the Debtor.

(ii)     All fees and expenses of Professionals for services rendered after the Effective Date shall be paid by the Debtor upon receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Debtor may agree or, in the absence of agreement, as ordered by the Bankruptcy Court. No further order or authorization from the Bankruptcy Court shall be necessary to permit the Debtor to pay the fees and expenses of Professionals for services rendered after the Effective Date.

**2.3** **U.S. Trustee's Fees.** The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930, if any, shall be paid in full on or before the Effective Date.

**2.4** **Debts Paid Prior to Confirmation.** The scheduled debts of Town of Tisbury, Town of Edgartown, and Martha's Vineyard Savings Bank (which also filed a Claim) have been paid through the post-Petition sale of the real estate securing those debts and, therefore, are not classified in the Plan. These entities shall not receive any further payments under the Plan.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and distribution pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interests qualify within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### 3.1 Claims and Equity Interests.

(a)     Class 1 shall consist of the Allowed Secured and Priority Tax Claim of the Department of the Treasury – Internal Revenue Service ("IRS").

The IRS filed Claim no. 4 in the amount $3,440,846.47, consisting of: (a) a secured claim for $2,808,946.20; (b) an unsecured priority claim for $477,671.42 pursuant to section 507(a)(8) of the Bankruptcy Code; and (c) a general unsecured claim for $154,228.85. However, $1,002,005.55 of the secured portion consists of penalties, as does the entirety of the general unsecured portion. Pursuant to Bankruptcy Code §§ 507(a)(8)(G), 726(a)(4), 1129(a)(7), and 1129(a)(9)(D), such amounts shall be subordinated, and the IRS shall have an Allowed Class 5 Claim in the amount of $1,156,234.40. Because the remaining secured and priority portions of the Claim are entitled to the same treatment under Bankruptcy Code §

1129(a)(9)(D), the Plan combines these amounts as an Allowed Class 1 Claim in the amount of $2,284,612.07 (with the IRS retaining its lien in the amount and priority existing as of the Petition Date).

(b)    Class 2 shall consist of the Allowed Secured and Priority Tax Claim of the Massachusetts Department of Revenue ("MDOR").

The MDOR filed Claim no. 1 in the amount $1,426,819.76, consisting of: (a) a secured claim for $1,385,660.76; (b) an unsecured priority claim for $35,921.24 pursuant to section 507(a)(8) of the Bankruptcy Code; and (c) a general unsecured claim for $5,237.76.  However, $205,876.09 of the secured portion consists of penalties, as does the entirety of the general unsecured portion.  Pursuant to Bankruptcy Code §§ 507(a)(8)(G), 726(a)(4), 1129(a)(7), and 1129(a)(9)(D), such amounts shall be subordinated, and the MDOR shall have an Allowed Class 5 Claim in the amount of $211,113.85.  Because the remaining secured and priority portions of the Claim are entitled to the same treatment under Bankruptcy Code § 1129(a)(9)(D), the Plan combines these amounts as an Allowed Class 2 Claim in the amount of $1,215,705.91 (with the MDOR retaining its lien in the amount and priority existing as of the Petition Date).

(c)    Class 3 shall consist of the Allowed Priority Tax Claim of the Massachusetts Department of Unemployment Assistance ("MDUA").

The MDUA filed Claim no. 10 in the amount $1,751,515.38, as an unsecured priority claim pursuant to section 507(a)(8) of the Bankruptcy Code.  However, Claim no. 10 includes estimates for years 2013 through 2017 and the Debtor has since filed returns showing actual liability substantially less than the MDUA's estimates.  Further, the MDUA seeks priority treatment for years 2012 through 2014, but such treatment is not available to the MDUA for these years pursuant to § 507(a)(8)(D) of the Bankruptcy Code.  Accordingly, the Debtor has objected to Claim no. 10.  As a result, the Allowed Class 3 Claim shall consist of the amount of Claim no. 10 that the Bankruptcy Court determines is valid and entitled to priority.  The MDUA shall have an Allowed Class 4 Claim for so much of Claim no. 10 that the Bankruptcy Court determines is valid but not entitled to priority.

(d)    Class 4 shall consist of all holders of Allowed General Unsecured Claims.

Class 4 includes the Allowed Claims of Brockway-Smith Co., Cooperative Reserve Supply, Inc., and Shirley F. Williams.  Although each such Claim purported to be secured, the collateral has since been sold and the proceeds disbursed to creditors with senior liens.  Therefore, the Claims are treated in the Plan as General Unsecured Claims.  Further, Class 4 does not include any payment for the scheduled debts to Wayne Guyther, III or Elizabeth Cosgrove, who have waived any Claims they may have for unpaid wages as a setoff against any liability for loans made by the Debtor.

8

(e)      Class 5 shall consist of subordinated penalty claims.

Class 5 includes the secured and unsecured pre-Petition penalty claims of the IRS and MDOR.  As noted above, these Claims are being subordinated by operation of Bankruptcy Code §§ 507(a)(8)(G), 726(a)(4), 1129(a)(7), and 1129(a)(9)(D).

(f)      Class 6 shall consist of the holders of equity interests in the Debtor's corporate entity as of the Petition Date.

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1      Class 1 – Secured and Priority Tax Claim of IRS.**

(a)      Impairment and Voting. Class 1 is impaired under the Plan. The IRS is entitled to vote to accept or reject the Plan.

(b)      Distributions. In full and complete satisfaction, settlement, release and discharge of the Allowed Class 1 Claim, the IRS shall receive 8% of its Allowed Class 1 Claim on the following terms:

(i)      The IRS shall share pro-rata, with the holders of Allowed Class 2 and Class 3 Claims, in a $125,000 payment by the Debtor on the Effective Date; and

(ii)      The IRS shall receive the remainder of its Allowed Class 1 Claim distribution under the Plan (the "Phased Tax Payments") as follows:

A. **Phase 1.**   15% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2019, and continuing on the last day of the ensuing months of August, October, and February.

B. **Phase 2.**   20% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2020, and continuing on the last day of the ensuing months of August, October, and February.

C. **Phase 3.**   30% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2021, and continuing on the last day of the ensuing months of August, October, and February.

D. **Phase 4.**   35% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2022, and continuing on the last day of the ensuing months of August, October, and February.

(c)     Retention of Liens.  The IRS shall retain its lien on the Debtor's property in the same priority as existed on the Petition Date until it has received all payments it is due under Section 4.1(b) of the Plan.  Upon receiving its full distribution under Section 4.1(b) of the Plan, the IRS' lien shall be deemed released and discharged.

(d)     Distributions for Claims Allowed After Initial and Subsequent Distributions. If a Class 1 Claim becomes Allowed after any of the above distributions are made, the Debtor will make all distributions which would have been made had such Claim been allowed on the Effective Date within 30 days of the allowance of such Claim, and make all other distributions as they become due under the Plan.

**4.2     Class 2 – Secured and Priority Tax Claim of MDOR.**

(a)     Impairment and Voting. Class 2 is impaired under the Plan. The MDOR is entitled to vote to accept or reject the Plan.

(b)     Distributions. In full and complete satisfaction, settlement, release and discharge of the Allowed Class 2 Claim, the MDOR shall receive 8% of its Allowed Class 2 Claim  on the following terms:

(i)     The MDOR shall share pro-rata, with the holders of Allowed Class 1 and Class 3 Claims, in a $125,000 payment by the Debtor on the Effective Date; and

(ii)     The MDOR shall receive the remainder of its Allowed Class 2 Claim distribution under the Plan as a Phased Tax Payment, as follows:

E.  **Phase 1.**   15% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2019, and continuing on the last day of the ensuing months of August, October, and February.

F.  **Phase 2.**   20% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2020, and continuing on the last day of the ensuing months of August, October, and February.

G.  **Phase 3.**   30% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2021, and continuing on the last day of the ensuing months of August, October, and February.

H.  **Phase 4.**   35% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2022, and continuing on the last day of the ensuing months of August, October, and February.

(c)     Retention of Liens.  The MDOR shall retain its lien on the Debtor's property in the same priority as existed on the Petition Date until it has received all payments it is due under Section 4.1(b) of the Plan.  Upon receiving its full distribution

under Section 4.1(b) of the Plan, the MDOR's lien shall be deemed released and discharged.

(d)     <u>Distributions for Claims Allowed After Initial and Subsequent Distributions</u>. If a Class 2 Claim becomes Allowed after any of the above distributions are made, the Debtor will make all distributions which would have been made had such Claim been allowed on the Effective Date within 30 days of the allowance of such Claim, and make all other distributions as they become due under the Plan.

**4.3     Class 3 – Priority Tax Claim of MDUA.**

(a)     <u>Impairment and Voting</u>. Class 3 is impaired under the Plan. The MDUA is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>. In full and complete satisfaction, settlement, release and discharge of the Allowed Class 3 Claim, the MDUA shall receive 8 % of its Allowed Class 3 Claim on the following terms:

(i)     The MDUA shall share pro-rata, with the holders of Allowed Class 1 and Class 2 Claims, in a $125,000 payment by the Debtor on the Effective Date; and

(ii)    The MDUA shall receive the remainder of its Allowed Class 3 Claim distribution under the Plan as a Phased Tax Payment, as follows:

    I.   **Phase 1.**   15% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2019, and continuing on the last day of the ensuing months of August, October, and February.

    J.   **Phase 2.**   20% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2020, and continuing on the last day of the ensuing months of August, October, and February.

    K.   **Phase 3.**   30% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2021, and continuing on the last day of the ensuing months of August, October, and February.

    L.   **Phase 4.**   35% of its Phased Tax Payments in 4 equal installments, commencing on June 30, 2022, and continuing on the last day of the ensuing months of August, October, and February.

(c)     <u>Distributions for Claims Allowed After Initial and Subsequent Distributions</u>. If a Class 3 Claim becomes Allowed after any of the above distributions are made, the Debtor will make all distributions which would have been made had such Claim been allowed on the Effective Date within 30 days of the allowance of such Claim, and make all other distributions as they become due under the Plan.

**4.4     Class 4 – General Unsecured Claims**

(a)     <u>Impairment and Voting</u>. Class 4 is impaired under the Plan. Each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>. In full and complete satisfaction, settlement, release and discharge of Allowed Class 4 Claims, each holder of an Allowed Class 4 Claim shall receive 3% of the holder's Allowed Claim on the Effective Date.

(c)     <u>Distributions for Claims Allowed After Initial and Subsequent Distributions</u>. If a Class 4 Claim becomes Allowed after any of the above distributions are made, the Debtor will make all distributions which would have been made had such Claim been allowed on the Effective Date within 30 days of the allowance of such Claim, and make all other distributions as they become due under the Plan.

**4.5     Class 5 – Subordinated Penalty Claims**

(a)     <u>Impairment and Voting</u>. Class 5 is impaired under the Plan. Each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>. Holders of Allowed Class 5 Claims shall receive no distributions under the Plan.

**4.6     Class 6 – Equity Interests**

(a)     <u>Impairment and Voting</u>. Class 6 is impaired under the Plan.  Each holder of a Class 6 Interest is entitled to vote to accept or reject the Plan.

(b)     <u>Retention of Equity Interests</u>. Elizabeth Cosgrove and Laura Abbady shall retain their equity interests in exchange for contributions of new value.  Wayne Guyther III's equity interest shall be cancelled.

(c)     <u>Stay of Distributions</u>. Holders of Class 6 Equity Interests shall not be entitled to or receive any return of equity, dividend, distribution, stock redemption, stock buy-back, or other non-compensatory payment during the Plan Period.

**4.7     Reservations of Rights.**

The Debtor reserves the right to, among other things, (i) contest the right of the holder of any Claim to vote on this Plan, or designate the vote of the holder of any Claim; (ii) contest the right of the holder of any Claim to receive distributions under this Plan; and (iii) seek to subordinate any Claim for inequitable conduct or otherwise.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

### 5.1    Plan Funding.

This Plan contemplates the use the accumulated cash from the Debtor's prior business operations, funds remitted to the Debtor by Martha's Vineyard Savings Bank following its sale of the lease for 21 East Line Road in Edgartown, Massachusetts, funds from the sale of various of the Debtor's vehicles and equipment, funds advanced to or on behalf of the Debtor by Elizabeth Cosgrove and Laura Abbady following the estate sale of their father's home, and the Debtor's increased operating income from its Plan Period business operations to (i) pay Allowed Administrative Expenses; (ii) pay Allowed Class Claims; and (iii) maintain a working capital reserve for the Debtor's ongoing business operations.  As a result of their contributions to the funding of the Plan, Ms. Cosgrove and Ms. Abbady shall retain their equity interests in the Debtor; all claims and causes of action that the Debtor may have against them shall be deemed fully satisfied; and therefore, no such claims and causes of action against them shall be preserved under ¶ 5.5 herein.

### 5.2    Execution of Necessary Documents.

Confirmation of this Plan shall constitute authorization for the Reorganized Debtor and its agents to execute such documents, instruments and agreements as are necessary to effectuate the terms of this Plan.

### 5.3    Amendment of Documents.

As of the Effective Date, all pre-Confirmation Date documents and agreements (whether written or oral) between the Debtor and any party, including, without limitation, any instruments, contracts, notes, financing statements, security agreements, assignments, bills of sale, leases, supply agreements, and shipping agreements, shall be deemed to be amended as necessary to effectuate and conform to the terms of this Plan. To the extent that there is any inconsistency between this Plan and any such documents and agreements, the terms of this Plan shall control.

### 5.4    Revesting of Property.

Except as otherwise provided in this Plan and as of the Effective Date, the Reorganized Debtor shall be vested with all of the Property of its Estate (including any and all Causes of Action) free and clear of all Liens, Claims, encumbrances, and interests except as specifically provided otherwise under this Plan.

### 5.5    Preservation of Causes of Action, Remedies, and Defenses.

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in this Plan, the Confirmation Order, any final order, or in any contract, instrument, release or other agreement entered into or delivered in connection with this Plan, the

Reorganized Debtor will exclusively retain and may enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, remedies, rights and Causes of Action that the Debtor or its Estate may hold against any person or entity. No preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation or effectiveness of this Plan. Additionally, the Debtor shall retain and exercise any and all lawful defenses to any legal action, pending or commenced hereafter in which it is a defendant or third-party defendant.

# ARTICLE VI
## DISTRIBUTIONS TO CLAIMS AND RESOLUTION OF DISPUTED CLAIMS 6.1

**Method of Distributions Under the Plan.**

(a)    In General. Subject to Bankruptcy Rule 9010, and except as otherwise provided in this Plan, or by the agreement of the holder of an Allowed Claim and the Reorganized Debtor, all distributions under the Plan to be made by, or on behalf of, the Reorganized Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Reorganized Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. The Reorganized Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)    Form of Distributions. Except as otherwise provided in this Plan, or by the agreement of the holder of an Allowed Claim and the Reorganized Debtor, any payment of Cash made by, or on behalf of, the Reorganized Debtor pursuant to the Plan shall be made by check.

(c)    Distributions to be on Business Days. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    Distributions to Holders as of the Distribution Record Date. As of the close of business on the date of approval of the Disclosure Statement, the claims register shall be closed. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on such date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on such date.

14

(e) <u>Disputes Regarding Claim Holder</u>. In the event a dispute shall arise as to the proper recipient of a Cash distribution, the Reorganized Debtor shall have the authority to place such funds in escrow pending adjudication or settlement of such dispute.

**6.2 Objections to Disputed Claims.**

Prior to the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Debtor. On and after the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Reorganized Debtor.

**6.3 Deadline for Objecting to Disputed Claims.**

Except as otherwise provided by order of the Bankruptcy Court, the Debtor, or the Reorganized Debtor as the case may be, shall file any objection to Claims against the Debtor by the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) 30 days after the Effective Date.

**6.4 Estimation of Claims.**

The Debtor or the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Debtor from pursuing any supplemental proceedings to object to any payment of such Claim. All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**6.5 Reversion of Unclaimed Checks.**

The amount of any checks issued for distributions under the Plan that remain uncashed for a period of 90 days after the date of such distribution shall revert and be vested in the Reorganized Debtor free and clear of any claim or interest of any holder of a Claim under the Plan

**6.6 Late-Filed Claims and Amendments.**

Each Claim as to which a proof of claim was required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the applicable Bar Date shall be

Disallowed without need for entry of an Order, except those late-filed claims approved by the Bankruptcy Court and specifically deemed timely filed by an order of the Bankruptcy Court. A proof of claim that has not been timely filed shall be of no force or effect whatsoever, including for purposes of any distribution made by the Debtor; nor shall any action (including issuance of an invoice, giving notice to the Debtor or otherwise making an "informal" proof of claim) serve for purposes of the Plan and distributions required of the Debtor as a substitute for timely filing a proof of claim. In no event shall the Allowed Amount of any Claim exceed the amount set forth in a proof of claim therefore filed on or before the applicable Bar Date except to the extent that the claimant has obtained prior to entry of the Confirmation Order, on notice to the Debtor, an Order permitting the filing of an amended proof of such Claim increasing the amount thereof. After entry of the Confirmation Order, no Order allowing or disallowing a Claim may be reconsidered, pursuant to Code Section 502(j) or otherwise, so as to increase the Allowed Amount thereof.

## ARTICLE VII
## VOTING ON THE PLAN

### 7.1 Voting of Claims.

Each holder of an Allowed Claim in an impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan. Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

### 7.2 Acceptance by Impaired Classes.

An Impaired Class of Claims or Equity Interests shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

### 7.3 Nonconsensual Confirmation.

If any impaired Class entitled to vote does not accept this Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (a) to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with Section 12.3 of this Plan.

## ARTICLE VIII
## EXECUTORY CONTRACTS, UNEXPIRED LEASES

**8.1 Assumption of Executory Contracts and Unexpired Leases.**

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpired lease that (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (iv) is not designated by the Debtor as being an executory contract or unexpired lease to be rejected at the time of confirmation of this Plan, shall be deemed rejected on the Effective Date, except that all unexpired leases for occupancy of the Debtor's retail locations and business offices, all executory insurance contracts relating to the Debtor's business operations, and all unexpired leases for the Debtor's vehicles shall be deemed assumed without any further action being required. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

**8.2 Payments Related to Assumption of Executory Contracts And Unexpired Leases.**

(a)    <u>Payment of Claims Arising From Assumed Contracts And Leases</u>. Any Allowed Claims arising from the assumption of an executory contract or unexpired lease will receive, in full and complete satisfaction, settlement, release and discharge of such Claims, payment in the ordinary course of business as and when such Allowed Claims become due pursuant to such executory contract or unexpired lease. No cure amounts shall be due for any amounts in arrears on such contracts and leases unless otherwise ordered by the Bankruptcy Court on or before the Confirmation Date.

(b)    <u>Disputed Claims and Bar Date</u>. If there is a dispute regarding (i) the amount of any claim arising from the assumption or rejection of an executory contract or unexpired lease, or (ii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Non-Appealable Order resolving the dispute and approving the assumption, and in accordance with the other terms of the Plan.

**8.3 Rejection Damage Claims.**

If the rejection of an executory contract or unexpired lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for such damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor, the Reorganized Debtor's Property and the Reorganized Debtor's agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before thirty (30) days following the later to occur of: (a) the rejection of such executory contract or unexpired lease, and (b) the

Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Debtor or the Reorganized Debtor, as the case may be, shall have the right to object to any such Claim for rejection damages in accordance with this Plan.

## ARTICLE IX
## RELEASE AND DISCHARGE OF CLAIMS

**9.1 Discharge.**

Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or this Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of this Plan are in full and final satisfaction, settlement, release and discharge as against the Debtor and the Reorganized Debtor of any debt or obligation of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtor or its Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted this Plan.

**9.2 Injunction Relating to the Plan.**

As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, its Estate or the Reorganized Debtor, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities discharged pursuant to this Plan, except to the extent expressly permitted under this Plan.

**9.3 Releases.**

Except as otherwise set forth in this Plan, as of the Effective Date, in consideration for, among other things, the obligations of the Debtor under this Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with this Plan, (a) each holder of a Claim that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or at any time was a creditor of the Debtor and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release, waive and discharge all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the Reorganized Debtor's obligations under this Plan and the contracts, instruments, releases, agreements and documents delivered under this Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are

based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the bankruptcy case or this Plan that such entity has, had or may have against the Debtor, the Estate, the Estate's Property, the Reorganized Debtor and/or the Reorganized Debtor's Property, which the releasing parties ever had, now have or which they may have in the future against the released parties for, upon or by reason of any matter, cause or thing whatsoever arising from the beginning of the world to the Effective Date.

**9.4 Cancellation of Existing Indebtedness and Liens.**

Except as may otherwise be provided in this Plan, on the Effective Date: (a) all credit agreements, promissory notes, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing same, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled, discharged and released, and (c) all of the right, title and interest of any holder of such liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtor. To the extent deemed necessary or advisable by the Reorganized Debtor, any holder of a Claim shall promptly provide the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

**9.5 Exculpation.**

Except as otherwise set forth in the Plan, neither the Debtor, the Reorganized Debtor nor any of its respective advisors, attorneys, accountants, agents, successors, or assigns, shall have or incur any liability to any holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, accountants, or affiliates, or any of their successor or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of the Chapter 11 bankruptcy proceeding, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, provided that the terms of this Section 9.5 shall not apply to any liability of the Reorganized Debtor for its bad faith, willful misconduct or gross negligence occurring after the Effective Date, and provided further, nothing herein shall limit or impair any rights, claims or obligations the Debtor may have against any entity as of the Petition Date. Nothing in the foregoing absolves the above-named persons, including the Debtor and the Reorganized Debtor, from fulfilling their obligations under the Plan.

**9.6 Setoffs.**

Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

## ARTICLE X

## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE OF THE PLAN

### 10.1 Conditions Precedent to Effectiveness.

This Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions have been satisfied, or such conditions have been waived by the Debtor pursuant to Section 10.2 of this Plan:

(a)    The Confirmation Order, in form and substance acceptable to the Debtor shall have been entered by the Bankruptcy Court;

(b)    If an appeal of the Confirmation Order has been timely filed, no stay of the Confirmation Order pending appeal shall have been entered;

(c)    The period for appeal of the Confirmation Order has expired pursuant to the Bankruptcy Rules; and

(d)    All actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective.

Any appeal of the Confirmation Order filed after the deadline for appeal has passed shall be deemed stayed.

### 10.2 Waiver of Conditions.

The Debtor may, in its sole discretion, waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 10.1.

### 10.3 Effect of Non-occurrence of Conditions to the Effective Date.

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgement, offer or undertaking by the Debtor.\

## ARTICLE XI

## RETENTION OF JURISDICTION

From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the bankruptcy case and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and Bankruptcy Rules 3021 and 3022, including, without limitation:

(a)      To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification, estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or estimate any Disputed Claim;

(b)      To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, authorized pursuant to this Plan or the Bankruptcy Code;

(c)      To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of executory contracts and unexpired leases to which the Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)      To enforce and adjudicate the provisions of the Plan subject to the terms of this Plan;

(e)      To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)      To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in this Plan;

(g)      To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)      To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)      To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)      To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)      To determine any other matters that may arise in connection with this Plan, the Disclosure Statement, the Confirmation Order, or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)      To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article IX hereof and enter such

orders as may be necessary or appropriate to implement such releases, injunctions or other provisions; and

(m)    To enter an order and/or final decree concluding the bankruptcy case.

## ARTICLE XII

## MISCELLANEOUS

### 12.1 Continuation of Injunctions or Stays Until Effective Date.

All injunctions or stays provided for in the bankruptcy case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.2 Exemption from Transfer Taxes.

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any security interest under, in furtherance of, or in connection with the Plan, the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax or governmental assessment.

### 12.3 Amendment or Modification of the Plan.

Alterations, amendments or modifications of this Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that this Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code. This Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted this Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor or the Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit to this Plan.

### 12.4 Severability.

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 12.5 Revocation or Withdrawal of the Plan.

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then this Plan shall be deemed null and void.

### 12.6 Binding Effect.

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

### 12.7 Notices.

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor shall only be effective if in writing and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

H N Hinckley & Sons, Inc.
61 Beach Road
Vineyard Haven, MA 02568

With a copy to:

Adam J. Ruttenberg, Esq.
ARENT FOX LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199

**12.8 Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent this Plan, or the Plan Documents provide otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.9 Post-Confirmation Fees, Final Decree.**

The Reorganized Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered. A final decree shall be entered as soon as practicable after the confirmation of the Plan, after all motions, contested matters, and adversary proceedings have been finally resolved. The monthly financial report shall include the following:

    (a) A statement of all disbursements made during the course of the month, whether or not pursuant to the Plan;

    (b) A summary, by class, of amount distributed to each recipient under the Plan, and an explanation of the failure to make any distributions under the Plan;

    (c) The Debtor's projections as to its continuing ability to comply with the terms of the Plan;

    (d) A description of any other factors which may materially affect the Debtor's ability to complete its obligations under the Plan; and

    (e) An estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

**12.10 Headings.**

Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

**12.11 Inconsistency.**

In the event of any inconsistency between this Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to this Plan, the terms of this Plan shall govern.

24

Dated: February *15*, 2019

H N Hinckley & Sons, Inc.
CHAPTER 11 DEBTOR AND
DEBTOR-IN-POSSESSION

By: Wayne Guyther, III
Its: President

By its counsel,


/ s / Justin A. Kesselman
Adam J. Ruttenberg, BBO# 553158
Justin A. Kesselman, BBO# 687793
ARENT FOX LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 973-6100
adam.ruttenberg@arentfox.com
justin.kesselman@arentfox.com